JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Molly Randall f/k/a Molly Moskowitz and Michael Randall

**(b)** County of Residence of First Listed Plaintiff   Camden
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

L. Kenneth Chotiner, LL.M. 50 E. Wynnewood Rd. Ste. 22-378, Wynnewood, PA 19096 215.564.6544

## DEFENDANTS

Cescaphe Limited, LLC

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | Act of 2016 | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sec. 1332
Brief description of cause:
Class Action brought against Cescaphe Limited, LLC for violations of the consumer protection law, fraud, recession, and breach of contract.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
June 24, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 19 Colby Ave., Stratford, NJ 08084 _____

Address of Defendant: _____ 923 N. 2nd St., Philadelphia, PA 19123 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/24/2021    _____ *(signature)* _____ Attorney sign here    077451

*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☑ 9. All other Diversity Cases
  *(Please specify):* _____ Personal Property (Fraud) _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, L. Kenneth Chotiner, LL.M., counsel of record *or pro se plaintiff*, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

- ☐ Relief other than monetary damages is sought.

DATE: 06/24/2021    _____ *(signature)* _____ Sign here if applicable    077451

*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MOLLY RANDALL, f/k/a MOLLY MOSKOWITZ, AND, MICHAEL RANDALL**<br>Individually and on behalf of all others similarly situated<br><div align="right">**Plaintiffs**</div> | **CIVIL ACTION** |
| <div align="center">**Vs.**</div> | **No.: 21-CV-** |
| **CESCAPHE LIMITED, LLC**<br>d/b/a CESCAPHE EVENT GROUP<br><div align="right">**Defendant**</div> | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### I.    PARTIES

1.      Plaintiffs, Molly Randall, f/k/a Molly Moskowitz, and Michael Randall, ("Plaintiffs") are adult individuals residing at 19 Colby Avenue, Stratford, NJ 08084.

2.      Defendant, Cescaphe Limited, LLC d/b/a Cescaphe Event Group, ("Defendant" or "Cescaphe") is, an affair management company that, upon information and belief, a limited liability company incorporated under the laws of the Commonwealth of Pennsylvania with a registered place of business at 923 N. 2nd Street, Philadelphia, PA 19123.

3.      Defendant, Cescaphe Limited, LLC, ("Defendant" or "Cescaphe"), purports to offer affair venues, catering, and related services to the public. Defendant is a master at taking advantage of couples/parents who seek a once in a lifetime affair (*i.e.* wedding/bar or bat-mitzva) venue, catering, and related services. As stated in more detail below, Defendant, Cescaphe, even used a pandemic and government restrictions to take advantage of Plaintiffs, Molly Randall and Michael Randall, and other Class members similarly situated, by refusing to return deposits for good and/or services it could not provide on a date it guaranteed.

4.      It is believed and therefore averred that Defendant, Cescaphe, owns and/or operates approximately six (6) venues, each of which are located in the city and county of Philadelphia.

5.      All of the acts alleged to have been done or not done by Defendant, Cescaphe, were done or not done by Defendant, Cescaphe, its agents, servants, workmen, and/or employees, who were at all times relevant hereto acting within the course and scope of their employment for and on behalf of Defendant, Cescaphe.

## II.      JURISDICTION AND VENUE

6.      This Court has both general and subject-matter jurisdiction over the parties and over the subject matter of the causes of action asserted in this Complaint in that Defendant, routinely, continuously, systematically, and substantially, conducted and continues to conduct business in Philadelphia, Pennsylvania, giving rise to transactions or occurrences therein.

7.      This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from Defendant, there are more than 1,000 Class members and the aggregate amount in controversy exceeds $5,000,000.

8.      This Court has personal jurisdiction over Defendant as it directly engaged in business transactions within the Commonwealth of Pennsylvania, such that it has sufficient minimum contacts with the Commonwealth of Pennsylvania.

9.      Venue is proper under 28 U.S.C. §1392(b)(1) and (2) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## III.      STATEMENT OF FACTS

10.      Plaintiffs bring this Class Action Complaint on behalf of themselves and all other similarly situated individuals (the "Class") who entered into a contract with defendant,

Cescaphe, for goods and/or services—*i.e.* once in a lifetime affairs such as weddings and bar/bat mitzvas—that were primarily for personal, family, or household purposes, which were originally scheduled and guaranteed by Defendant, Cescaphe, to be held beginning March 6, 2020, through June 10, 2021.

11.    According to the terms of the contracts, Plaintiffs and the other Class members paid an initial deposit, which "guarantee[d] the date of [the] affair". **See Exhibit "A." A true and correct copy of the contract between Plaintiffs and Defendant, Cescaphe, "Payment Schedule."**

12.    However, in February 2020, the United States, including the Commonwealth of Pennsylvania, was faced with a worldwide pandemic known as the COVID-19 virus. COVID-19 can be deadly. Starting in March 2020, the United States government, the Commonwealth of Pennsylvania, and the City of Philadelphia, employed a shut down for all public gatherings indefinitely to prevent the spread of the deadly virus. Gatherings of over ten (10) people were prohibited, and even if not prohibited, were recognized by national, state, and, city, health officials to be extremely dangerous and were expressly discouraged. Those same restrictions, rules, guidelines, and warnings persisted at all times relevant to this Complaint which, have required wearing masks, social distancing, and overall avoiding and/or prohibiting large gatherings. Indeed, the spread is so concerning that businesses shut down, schools closed and then were compelled to remote learning, colleges have been closed for in person learning, and sport seasons have been postponed, cancelled, or carried out without fans.

13.    Of course, what Defendant, Cescaphe, markets, promises, and sells are, among other things, hosting large numbers of people together, which includes once in a lifetime affairs such as wedding receptions and bar/bat-mitzvas. Couples and families schedule dates well in advance, which are time sensitive, with the intent and purpose that many guests will

plan for, travel to and attend the affairs. But these affairs involve far more people than rules, regulations, restrictions, guidelines, warnings, and common-sense permit. Plans have to be made for these affairs well in advance so invitations can be sent, travel plans and other arrangements can be made. Needless to say, a once in a lifetime affair is meant to be a joyous event to celebrate with friends and family, and not be limited by a number because of a global pandemic.

14.     Obviously, the pandemic restrictions put in place by the Commonwealth of Pennsylvania and the City of Philadelphia beginning on March 6, 2020, and continuing through June 10, 2021, made it impossible and/or illegal to hold affairs like Plaintiffs and the other Class members on the originally agreed upon dates, which Defendant, Cescaphe, had guaranteed.

15.     In fact, on May 5, 2020, Pennsylvania Attorney General Josh Shapiro issued a press release titled *Travel, Event Refund Policies Must Be Honored During COVID-19 Emergency*, wherein he stated that "Businesses cannot legally retain a penalty if an event is cancelled because of COVID-19. **See Exhibit "B" a true and correct copy of the press release dated May 5, 2020.**

16.     Obviously, A.G. Shapiro does not create so he noted in the press release that a business "may keep a fee for the cost of holding the venue date and planning logistics of the event, *if the contract allows*." **(emphasis added.)**

17.     This press release gave Defendant, Cescaphe an idea: Engage in fraudulent and deceptive conduct by misconstruing and misstating the terms of the contracts and claiming that the deposits were not to guarantee the date of the affair but were instead "event planning fees" that it was permitted to keep.

18.     Then, after blatantly misrepresenting the contract terms, Defendant, Cescaphe, continued with its fraudulent and deceptive behavior by pressuring Plaintiffs and the other Class members to reschedule their events for a later date, to move their scheduled events to offsite premises (*i.e.* backyards), change their events to outdoor micro-weddings, and even offering a twenty-four (24) month credit to transfer the "non-refundable and non-transferable deposit" to a different event to be held at a later date, or offering a twenty-four (24) month credit to transfer the "non-refundable and non-transferable deposit" to friends or family members who scheduled events with Defendant, Cescaphe, for later dates.

19.     Despite the fact that the "non-refundable and non-transferable deposit" was paid to guarantee the date of the affair, it appears that the only thing Defendant, Cescaphe, will not do is to honor its guarantee and return the deposit.

20.     Defendant, Cescaphe, also continued with its fraudulent and deceptive behavior by telling Plaintiffs and other Class members that available dates were quickly being booked and that the affair, which was originally scheduled to be held on a desirable weekend date, might have to be held on an undesirable weekday date.

21.     Defendant, Cescaphe, was so anxious to compel Plaintiffs and the other Class members to reschedule affairs so it could keep the deposits, that it rescheduled affairs before knowing when the pandemic related governmental restrictions would be lifted.

22.     Because Defendant, Cescaphe, reschedule events before the governmental restrictions were lifted, Defendant, Cescaphe, rescheduled events for dates where it remained impossible and/or illegal for Defendant, Cescaphe, to comply with its contractual obligations.

23.     Once Defendant, Cescaphe, pressured a host into rescheduling an affair, it sent the host(s) an Amendment to the contract electronically. **See Exhibit "C."** A true and correct **copy of the Amendment between Plaintiffs and Defendant, Cescaphe.**

24.    Defendant, Cescaphe, pressured hosts into rescheduling events to avoid refunding any deposits and claims that the deposits paid by Plaintiffs and the other Class members to "guarantee the date of [the]affair" is "non-refundable" despite the fact it received SBA Coronavirus-related PPP loans in the amount of $4,077,907.00.

25.    Defendant, Cescaphe's, fraudulent and deceptive conduct was so persuasive and effective that, out of the hundreds of these once in a lifetime affairs scheduled during pandemic restrictions, Defendant, Cescaphe, claims that only "scant few" have not rescheduled or reconfigured their events.

26.    Plaintiffs seek redress for violations of Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law (the "Act" or "UTPCPL"), Fraud, Rescission, and, Breach of Contract.

## IV.    CLASS ACTION ALLEGATIONS

27.    This suit is brought as a Class Action pursuant to FRCP Rule 23(a), (b)(2) and (b)(3), seeking damages and injunctive relief pursuant to federal law and pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 *et seq.* ("UTPCPL"), specifically 73 P.S. §201-9.2 and Pennsylvania Common Law on behalf of the members of the following Class:

> Individuals who entered into agreements/contracts, which were primarily for personal, family, or household purposes, with Defendant, Cescaphe, for an affair that could not take place on the agreed upon date between March 6, 2020, and June 10, 2021 due to the COVID-19 virus, legal regulations, health considerations and/or guidelines, and/or an inability to reasonably plan in advance.

28.    Excluded from the Class are the Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as

those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

29.    Numerosity: members of the Class are so numerous that joinder is impracticable. Plaintiffs believe that there are over a thousand members of the Class dispersed throughout the Northeast such that joinder of all Class members is impracticable.

30.    Typicality: Plaintiffs' claims are typical of the claims of the other Class members. The factual and legal bases of Defendant's liability are the same and resulted in injury to Plaintiffs and all other members of the proposed Class.

31.    Equal Representation: Plaintiffs will represent and protect the interests of the proposed Class, and their interests do not conflict with the interests of the proposed Class members they seek to represent.

32.    Commonality: Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Class and because the Class members share a common injury. Thus, determining damages with respect to the Class as a whole is appropriate. The common applicability of the relevant facts to claims of Plaintiffs and the proposed Class are inherent in Defendant's wrongful conduct because the injuries incurred by Plaintiffs and each member of the proposed Class arose from the same conduct alleged herein.

33.    There are questions of law and fact common to the Class that predominate over any questions that may affect only individual Class members. These questions include, but are not limited to:

      a.  Whether the Defendant's conduct violated the Unfair Trade Practices Act and Consumer Protection Law, 73 P.S. §§202-1 *et seq*:

      b.  Whether the Defendant's conduct violated Pennsylvania common law; and,

c. The type and measure of damages suffered by the Plaintiff and Class members.

34.    Prevention of inconsistent or varying adjudications: If prosecution of a myriad of individual actions for the conduct complained of were undertaken, there likely would be inconsistent or varying results. This would have the effect of establishing incompatible standards of conduct for the Defendant. Certification of Plaintiffs' proposed Class would prevent these undesirable outcomes.

35.    Predominance and superiority: This proposed class action is appropriate for certification. Class proceedings on these facts and this law is superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the proposed Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be insured.

## V.    CAUSES OF ACTION

### COUNT I
### Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

36.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

37.    Defendant, Cescaphe's, conduct describe above and throughout this Complaint constitutes unfair methods of competition or unfair or deceptive acts or practices in violation

of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §202-1 *et seq.*

38.     Specifically, 73 P.S. §201-2(4) finds that the following are included in the definition of "unfair or deceptive acts or practices:"

> (xiv)  Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
>
> (xv)   Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed; and,
>
> (xxi)  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

39.     Defendant, Cescaphe, failed to comply with the terms of a written guarantee given to the buyer at the time the contract for the purchase of the goods and/or services was made in violation of 73 P.S. §201-2(4)(xiv).

40.     Specifically, the contracts between Defendant, Cescaphe, and Plaintiffs and the other Class members state that the initial deposit was to "guarantee the date of" the affair. **See Exhibit "A." A true and correct copy of the contract between Plaintiffs and Defendant, Cescaphe.**

41.     After the pandemic restrictions made it impossible and/or illegal to have the affair on the guaranteed date, Defendant, Cescaphe, stated that the deposit was "an event planning fee"—*i.e.* there is no guarantee.

42.     Defendant, Cescaphe, also violated §201-2(4)(xiv) because it did not permit Plaintiffs and the other Class members to cancel the contract pursuant to the contract's *Force Majeure* clause. **See Exhibit "A."**

43.     Defendant, Cescaphe also violated §201-2(4)(xv) by representing its services were needed because it claimed that Plaintiffs and other Class members could not cancel the contract and get a refund despite the contract's *Force Majeure* clause. **See Exhibit "A."**

44.     Defendant, Cescaphe's, statements that the deposit was an "event planning/reserve fee" that is a "non-refundable" is also fraudulent and/or deceptive conduct which created a likelihood of confusion or of misunderstanding in violation of §201-2(4)(xxi).

45.     Moreover, Defendant, Cescaphe, pressured hosts into rescheduling events by engaging in the above stated and other fraudulent and/or deceptive conduct.

46.     After Defendant, Cescaphe, pressured hosts into rescheduling events, it sent an contract amendment electronically without meeting the requirements of the E-Signatures Act, 15 U.S.C. Section 7001 *et. seq.* and the Electronic Transactions Act 73 Pa.C.S. Sec. 2260.101 *et. seq.* **See Exhibit "C."**

47.     Defendant, Cescaphe's, fraudulent and/or deceptive conduct stated herein and throughout also violates §201-2(4)(xxi) because, Defendant, Cescaphe, created a likelihood of confusion or of misunderstanding.

48.     Moreover, the contracts to reschedule events that Plaintiffs and the other Class members entered into with Defendant, Cescaphe, were for goods and/or services, which were primarily for family, personal, or, household purposes, having a sale price of twenty-five dollars ($25) or more that were sold or contracted to be sold by Defendant, Cescaphe, to Plaintiffs and the other Class members as a result of or in connection with, a contact with or call on the Plaintiffs and other Class members at their residence either in person or by telephone.

49.     Defendant, Cescaphe, did not provide Plaintiffs and the other Class members with notice of their right to cancel the contract pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 Pa.C.S.A. Section 201-1 *et seq.* **See Exhibits "A" and "C."**

50.    The right of rescission provided by the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 Pa.C.S.A. Section 201-1 *et seq.*, states in pertinent part:

### §201-7. Contracts: effect of rescission

(a) Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or resident at his residence either in person or by telephone, that consumer may avoid the contract or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale. Such notice of rescission shall be effective upon depositing the same in the United States mail or upon other service which gives the seller notice of rescission.

(b) At the time of the sale or contract the buyer shall be provided with:

(1) A fully completed receipt or copy of any contract pertaining to such sale, which is in the same language (Spanish, English, etc.) as that principally used in the oral sales presentation, and also in English, and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of ten points, a statement in substantially the following form:

"You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

(2) A completed form in duplicate, captioned "Notice of Cancellation," which shall be attached to the contract or receipt and easily detachable, and which shall contain in ten-point bold face type the following information and statements in the same language (Spanish, English, etc.) as that used in the contract:

Notice of Cancellation

(Enter Date of Transaction)

You may cancel this transaction, without any penalty or obligation, within three business days from the above date. If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned

within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram, to (name of seller), at (address of seller's place of business) not later than midnight of (date).

I hereby cancel this transaction.

(Date)
Buyer's Signature

(c) Before furnishing copies of the "Notice of Cancellation" to the buyer, both copies shall be completed by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation.

(d) Each buyer shall be informed at the time he signs the contract or purchases the goods or services, of his right to cancel.

(e) **The cancellation period provided for in this section shall not begin to run until buyer has been informed of his right to cancel and has been provided with copies of the "Notice of Cancellation."** (*emphasis added*.)

(f) Seller shall not misrepresent in any manner the buyer's right to cancel.

(g) Any valid notice of cancellation by a buyer shall be honored and within ten business days after the receipt of such notice, sellers shall

(i) refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by the seller; (iii) cancel and return any negotiable instrument executed by the buyer in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest created in the transaction.

(h) No note or other evidence of indebtedness shall be negotiated, transferred, sold or assigned by the seller to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the goods or services were purchased.

(i) Seller, shall, within ten business days of receipt of the buyer's notice of cancellation, notify him whether the seller intends to repossess or to abandon any shipped or delivered goods. If seller elects to repossess, he must so within twenty days of the date of buyer's notice of cancellation or forfeit all rights to the delivered goods.

51.     The contract Defendant, Cescaphe, gave Plaintiffs and the other Class members does not contain the requisite notice. **See Exhibits "A" and "C."**

52.     Plaintiffs believe and therefore aver that the contracts Defendant, Cescaphe, gave the other Class members does not contain the requisite notice.

53.     Because Defendant, Cescaphe, never informed Plaintiff or the other Class members of their right to rescind, that right never expired. **See 73 Pa.C.S.A. Section 201-7(e) and Burke v. Yingling, 666 A.2d 288 (Pa. Super. 1995).**

54.     Moreover, Defendant, Cescaphe, misrepresented Plaintiff and the other Class members right to rescind by stating that the deposit is "Non-Refundable and Non Transferrable." **See Exhibit "A."**

### COUNT II
### Fraud

55.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

56.     The conduct of Defendant, Cescaphe, by and through its agents, employees, and/or workmen as described herein constitutes fraud.

57.    At all times material hereto, defendant, intended to deceive and defraud Plaintiffs by fraudulently omitting and misrepresenting information concerning the contract, the availability of venues, and, the Plaintiffs' and other Class members' right to a refund.

58.    Defendant, Cescaphe, has refused to return Plaintiffs' payments representing it has no obligation to do so.

59.    Moreover, Defendant, Cescaphe, continued to execute contracts and amended contracts, to reschedule affair dates, without disclosing to Plaintiffs and the other Class members that they intended to and would retain monies paid even though Defendant could not meaningfully and materially perform on the terms agreed because of the COVID-19 pandemic or other similar affair which would prevent the affair from taking place on the "guaranteed" date specified in Defendant's agreement.

60.    Defendant, Cescaphe's, statements and representations as to A.G. Shapiro's press release, the guaranteed date, the refund policy, the *force majeure* clause, venue availability, and, the ability to hold an affair were false.

61.    The statements, representations, and omissions of material facts were made or omitted by Defendant, Cescaphe, with reckless indifference for the truth or falsity thereof, or were known by said defendant to be false when made and were made and/or omitted with intent to deceive and or defraud Plaintiffs and the other Class members and to induce Plaintiffs and the other Class members to make payments and/or not to seek a refund of payments and were made by one of Defendant, Cescaphe's, employees, agents and/or servants who were acting within the course and scope of their employment and/or agency and/or servitude.

62.    Plaintiffs and the other Class members did not know the truth, reasonably believed that the statements and/or representations were true, relied upon them, and were thereby induced into paying the initial deposit and/or additional monies.

63.    Because of the false and fraudulent misrepresentations and omissions of material facts of Defendant, Cescaphe, Plaintiffs and the other Class members suffered monetary damages.

## COUNT III
### Rescission

64.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

65.    Plaintiffs and the other Class members are entitled to the remedy of rescission. The purpose of the respective agreements between Plaintiffs and defendant cannot be accomplished and the time sensitivities of performance are essential to Plaintiffs' respective affairs. Each of Plaintiffs' affair were set for a particular and defined date that Defendant, Cescaphe, guaranteed—the central object of any agreement between Plaintiffs and defendant, which is time sensitive. Plaintiffs and the other Class members are therefore entitled to be restored to the position they help before ever dealing with and paying Defendant, Cescaphe. Performance cannot be accomplished due to the COVID-19 pandemic, governmental regulations, and health guidelines and concerns, for affairs that were planned for dozens if not hundreds of people.

## COUNT IV
### Breach of Contract

66.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

67.     By virtue of Defendant, Cescaphe's, aforementioned conduct, including but not limited to ignoring the existence of the guarantee and/or *force majeure* clause and refusing to refund the deposit, said defendant has breached its contractual obligations, including but not limited to its duty of good faith and fair dealing.

68.     At the times material hereto and by reason of the above mentioned agreement and/or contract, Defendant, Cescaphe, through its authorized agents and/or employees, was charged with a duty of good faith and fair dealing in respect to the provisions of the contract. **See Exhibit "A."**

69.     This duty included the obligation to make sure that the goods and/or services and/or guarantees as provided in the contract were provided to Plaintiffs and other Class members. **See Exhibit "A."**

70.     Upon the aforesaid circumstances, including the failure to provide these goods and/or services and/or guarantees to plaintiff, Defendant, Cescaphe, acting through its agents and/or employees, breached the contract with Plaintiff. (See Exhibit "A.")

71.     As a result of Defendant, Cescaphe's, breach, Plaintiffs and the other Class members sustained foreseeable damages, including but not limited to economic damages in the amount of their deposits, relating to the contract, for which the defendant did not perform the agreed upon contract provisions and/or services and/or guarantees.

### JURY TRIAL DEMANDED

72.     Plaintiffs hereby demand a trial by jury of all claims asserted in this Complaint.

**PRAYER FOR RELIEF**

73.    **WHEREFORE**, the Plaintiffs, on behalf of themselves and of all others similarly situated, pray for judgment against Defendant as follows:

a.    The Court determines that this action may be maintained as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the class once certified;

b.    Adjudication that the acts alleged herein constitute unfair or deceptive acts or practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 *et seq.*, specifically §202-1(4);

c.    Adjudication that Plaintiffs and the Class members have are entitled to rescind the contracts pursuant to 73 P.S. §201-7 and are entitled to a refund of all monies paid to Defendant, Cescaphe.

d.    Adjudication that the acts alleged herein constitute violations of the Common Law of Pa.;

e.    Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

f.    Pre-judgment and post-judgment interest on such monetary relief;

g.    Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of its conduct alleged herein;

      h.      Equitable relief requiring Defendant to cease the fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding as described herein;

      i.      The costs of bringing this suit, including reasonable attorneys' fees; and,

      j.      All other relief to which Plaintiffs and members of the Class may be entitled at law or in equity.

Dated June 24, 2021              Respectfully submitted,

BY: _____

L. Kenneth Chotiner, LL.M.
**The Chotiner Firm**
50 E. Wynnewood Rd., Ste. 22-378
Wynnewood, PA 19096
215.564.6544


John F. Innelli, Esquire
**JOHN F. INNELLI, LLC**
Two Penn Center, Ste. 1300
Philadelphia, PA 19102
484.326.0275

EXHIBIT "A"

# CESCAPHE





EXHIBIT
"A"



Thank you for choosing Cescaphe Event Group to plan and host your affair at Water Works.   Please read this agreement carefully and call your Event Specialist with any questions or concerns. We would be happy to review your Letter Agreement with you in further detail, should you have any questions. Please do not hesitate to contact our office directly at 215.238.5750.

The details of your event are as follows:

Letter Agreement Date:  November 9, 2018

Clients: Molly Moskowitz and Michael Randall

Clients' Address of Record: 19 Colby Avenue. Stratford NJ, 08084

Couple's Name: Molly Moskowitz and Michael Randall

Price Per Person: $195.00 including all event planning fees, service fees, and liquor and sales taxes; children 2yrs – 12 years of age $45.00 including all event planning fees, service fees, and sales taxes; vendor meals $45.00 including all event planning fees, service fees, and sales taxes.  Included in these prices are all of the event planning and management services performed by Cescaphe Event Group.

Ceremony On-Site: Yes $ 1,895.00

Minimum Guest Count: 200 Adults

Deposit Required: $5,000.00 deposit Please make check payable to Cescaphe Event Group, 925 North 2nd Street  Philadelphia, PA 19123 to guarantee the below referenced date at Water Works. This amount will be applied to your event planning.  If the deposit is not received along with this Letter Agreement signed within 30 days of the Letter Agreement Date, this contract will be null and void.  The event date will no longer be reserved for your affair and will be released for booking by others.

Valet Parking: $1,295.00 including all taxes and fees.

Mill House Deck Permit Fee: $2,500.00

Type of Affair: Wedding

Date of Affair:  Friday, June 12, 2020

Location of Affair: Mill House Deck - Water Works-640 Waterworks Drive Philadelphia, PA 19130

Time of Affair: Water Works will provide Clients an exclusive affair and use of facility for a total of 6 hours.  Affairs which include a ceremony will be provided an additional ½ hour, for a total of 6 ½ hours.



Cescaphe Event Group will provide you, the Clients, with various event planning and event management services for your wedding at Water Works.  A Description of these services is enclosed in this Letter Agreement.

**Exhibit A**

Water Works will provide you, the Clients, with the following:

Champagne Bar
Champagne, accompanied by fresh raspberries, is personally served to greet your guests.

Top Shelf Open Bar
Bar to be open and staffed for a total of 6 hours. A copy of the Bar Item Listing, including our Wine List, is enclosed.

**Exhibit B**

Cocktail Reception to include, but not limited to, Chilled Seafood Station, Pasta Station, Sushi Station,  Passed Hors d'oeuvres, Butlered drink sampling . A copy of your menu is enclosed.

**Exhibit C**

Dinner will include your choice of salad, sorbet and a total of 3 gourmet entrée items. All items will be listed on a professionally designed menu and provided to your guests at dinner. A vegetarian meal option and child entrees will also be provided, however will not be listed on your printed event day menu.  A copy of your menu is enclosed.

**Exhibit C**

Client will be provided with a Viennese Dessert Display and will have the option of either a Chocolate Display or a Crepe Station.  A four tier wedding cake is also included.  A copy of your menu is enclosed.

**Exhibit C**

Water Works will supply main reception tent, restrooms, kitchen tent and equipment, dance floor, stage, ceiling tent liner, generators, chandelier (3), standard tables, chairs, china glassware, flatware and selected linens for a clean and elegant event.

Water Works has an exclusive retainer with Beautiful Blooms for all lighting, draping and furniture upgrades at the Water Works Venue.



## Payment Schedule

The Non-Refundable and Non Transferrable deposit of $5,000.00 made payable to Cescaphe Event Group guarantees the date of your affair. The deposit is to be returned with this signed Letter Agreement. The initial deposit is applied toward your event planning.

Your final payment will be based on your final guest count. Your final payment will be due on the Tuesday before your affair and shall be in the form of checks or cashier's checks.

A final guest count will be taken during the event and if necessary, a supplemental invoice for the balance due payable to the Venue will be generated.

Also, in an effort to accommodate all of our clients, if it would be easier for you to do a monthly payment plan between now and the date of your event, please contact Cescaphe Event Group to make arrangements.

## Cancellation Policy

If, for any reason, you cancel the affair more than nine months prior to the date of your affair, you will relinquish your initial $5,000.00 deposit, and will have no further financial responsibility.

If, for any reason, you cancel the affair within nine months prior and more than six months prior to the date of your affair, you are responsible for ten (10%) percent of the total prices, in addition to the initial $5,000.00 deposit, and will have no further financial responsibility.

If, for any reason, you cancel the affair within six months prior and more than one month prior to the date of your affair, you are responsible for thirty (30%) percent of the total prices, in addition to the initial $5,000.00 deposit, and will have no further financial responsibility.

If, for any reason, you cancel the affair within one month prior to the date of your affair, you are responsible for fifty (50%) percent of the total prices, in addition to the $5,000.00 deposit, and will have no further financial responsibility

## Liability/Indemnification

The Clients agree that Water Works and Cescaphe Event Group shall not be liable for damages or loss of any equipment, clothing or other valuables of the Clients and their guests, invitees, independent contractors or other agents at the event venue prior to, during, or following the affair.

The Clients agree to indemnify, defend and hold harmless Cescaphe Event Group and Water Works and its members, managers, and employees against all damages, liabilities, causes of action or claims caused by Clients, their guests, invitees, independent contractors or agents arising out of or relating to the performance of the reception under this Letter Agreement except those claims arising out of the gross negligence or willful misconduct of Cescaphe Event Group or the venue.

Cescaphe Event Group works hard to ensure products are free of allergens as requested for events. While we take steps to minimize the risk of cross contamination of allergens, we do not have a separate kitchen that is allergen free. Individuals with severe allergies should take appropriate steps to protect themselves as they would in any other public food establishment.



## Force Majeure

The performance of this Letter Agreement by either party is subject to acts of God, war, government regulations, natural disaster, strikes, civil disorder, terrorism, complete curtailment of transportation, or other emergencies making it illegal or impossible to substantially perform this Agreement.

In such an event, prompt notice shall be given by the party canceling pursuant to this section. The party seeking cancellation of performance under this provision must exercise due diligence and take all reasonable steps to avoid, remove and overcome the effects of the force majeure event.

## Law and Arbitration

This Letter Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. Any and all disputes, disagreements, or claims arising out of or relating to or in respect to this Letter Agreement, or any breach thereof, or the scope of arbitrability of this arbitration provision shall be settled by arbitration in Philadelphia, PA in accordance with the rules then existing of: (i) ADR Options Incorporated pursuant to its Rules of Procedure for Arbitration; or, (ii) the American Arbitration Association. The award of the arbitrator shall be final, non-appealable and conclusively binding upon the parties hereto and may be entered in any court having jurisdiction thereof.

## Signed Agreement

The exhibits that are referred to on page 2 of this Letter Agreement are part of the Letter Agreement. Please do not return these exhibits; you may keep the exhibits for your reference.

Please sign both Letter Agreements and return one complete four page Letter Agreement to our office, along with your deposit, using the self-addressed stamped envelope provided. The additional signed Letter Agreement is for your records.

In witness whereof, the parties have executed this Letter Agreement as of the date signed below.

Kelly Coyle, VP Client Development and Marketing
Cescaphe Event Group

Date: 11/6/8

_____
Molly Moskowitz - Client

Date: _____

_____
Michael Randall- Client

Date: _____

EXHIBIT "B"

Home
>
News & Media
>
AG Shapiro: Travel, Event Refund Policies Must Be Honored During COVID-19 Emergency

**MAY 5, 2020 | TOPIC:**

SHARE

HARRISBURG— Attorney General Josh Shapiro today urged businesses to honor their promised refund policies for customers who had their trips and events cancelled due to COVID-19 closures.

"If the policy says a consumer gets a full refund if an event is cancelled, that consumer better get a full refund," said Attorney General Shapiro. "These businesses cannot sail away with consumers' money when the trip isn't happening or a concert is cancelled with no reschedule date."

Entertainment, travel, and event companies typically have a refund policy for consumers for unplanned and emergency circumstances, like COVID-19, that require an unexpected or emergency cancellation.

Attorney General Shapiro is reminding companies of these obligations to their customers:

**Businesses cannot legally retain a penalty if an event is cancelled because of COVID-19.** In most cases, they may only retain a reasonable fee for their time and expenses, not the full cost of an event. For example, if a wedding reception is cancelled because of COVID-19, the venue cannot retain the entire cost of the venue rental as a penalty for the cancellation—however, they may keep a fee for the cost of holding the venue date and planning logistics of the event, if the contract allows.

**Businesses that don't honor their written cancellation policies could be violating state consumer protection laws.** The Pennsylvania Unfair Trade Practices and Consumer Protection Law allows for restitution to consumers and penalties of up to $1,000 for each violation and $3,000 for each violation involving a consumer age 60 or older. If this same wedding venue alters their cancellation policy after a couple has cancelled their event, and the venue's policy change retroactively affects them, they may be eligible for restitution under state law.

The Office of Attorney General also urges businesses to be flexible with their cancellation policies, asking businesses without an existing refund date-cutoff to offer customers full refunds for events and trips being rescheduled more than 60 days from the original cancellation.

Consumers who have not been refunded for canceled trips and events can dispute charges with their credit card companies, or file a complaint with the AG's Bureau of Consumer Protection if they believe they have been harmed. Consumers who need airline refunds should file a complaint with the U.S. Department of Transportation, at https://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm.

# # #



EXHIBIT "C"

DocuSign Envelope ID: 8D8FCE24-5C27-40C1-BFAE-D9D03D43D97B

# CESCAPHE

## Amendment to Letter Agreement for Existing Wedding

Molly Moskowitz and Michael Randall Wedding, has requested that Cescaphe Ltd, LLC amend their existing Letter Agreement among the Parties and Cescaphe Ltd, LLC dated June 12th, 2020.  The only changes to the existing Letter Agreement are set forth in their entirety below:

Clients requested and Cescaphe LTD, LLC accepted the following limited changes to the aforementioned existing Letter Agreement:

Location of Event: Cescaphe Ballroom

The Date of Affair will be held on May 7th, 2021.

All existing deposits paid to date on the aforementioned Existing Letter Agreement shall be fully credited towards the event.  NO convenience fee or any additional deposits will be required to secure the changes listed above.

This Amendment constitutes the entire written agreed upon changes to your existing Letter Agreement.

All other terms and conditions of the Letter Agreement shall remain binding and in full force subject to the laws of the Commonwealth of Pennsylvania.

Agreed and Accepted by for Client(s)                    Agreed and Accepted by Cescaphe Ltd, LLC

*Molly Moskowitz* (DocuSigned by) 8478B7B995A64E9          6/5/2020          *Kellian Coyle* (DocuSigned by) FFEF38C68C8D400          6/5/2020

Molly Moskowitz                    Date                    Kellian Coyle                    Date

                                                            Vice President Client Development

*Molly Moskowitz* (DocuSigned by) 8478B7B995A64E9          6/5/2020

Michael Randall                    Date



EXHIBIT "C"