## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOLLY RANDALL,** *et al.*, **individually and on behalf of all others similarly situated** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 21-2806** |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CESCAPHE LIMITED, L.L.C.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                          DECEMBER 12, 2022

## MEMORANDUM OPINION

**INTRODUCTION**

In the amended complaint, Plaintiffs Molly Randall, Michael Randall, Pete Vargas, Meichelle Feinberg, Robert Daniels, Maggie Vargas, and Deborah Monti (collectively, "Plaintiffs") assert claims, individually and on behalf of purported class members, against Defendants Cescaphe Limited, L.L.C. ("Cescaphe"), and Joseph Volpe ("Volpe") (collectively, "Defendants") for breach of contract, rescission, unjust enrichment, conversion, fraud, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq.*, premised on allegations that Defendants wrongfully refused to return "non-refundable" deposits that Plaintiffs had placed to hold their respective wedding receptions at Defendants' venues that were cancelled or postponed due to the COVID-19 pandemic and resulting restrictions.

Before this Court is a motion to compel arbitration filed by Defendants pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, premised on arbitration provisions (the "Arbitration Provisions") contained in the written agreements governing the parties' relationships. [ECF 15]. In their response in opposition, Plaintiffs contend that: (1) this matter should not go to arbitration because some of the Plaintiffs are not parties to the Arbitration Provisions; (2) the issue

of whether Plaintiffs' class claims should be arbitrated should be decided by the arbitrator; and (3)

the Arbitration Provisions are not enforceable because they were illegal.  [ECF 16].  The issues

raised by the parties have been fully briefed and are ripe for disposition.[1]  For the reasons set forth,

Defendants' motion to compel arbitration is granted.

## BACKGROUND

The facts relevant to the validity and enforceability of the Arbitration Provisions are the

following:[2]

> Cescaphe is an event management company that offers hosting, planning, and management services for events such as weddings.  Volpe is the owner and chief executive officer of Cescaphe.

> Plaintiffs Molly Randall, Michael Randall, Pete Vargas, Meichelle Feinberg, Maggie Vargas, and Kyle Miller entered into written agreements (the "Letter Agreements") with Cescaphe for their weddings to be held at Cescaphe's various venues.  Plaintiffs Robert Daniels and Deborah Monti were not parties to the Letter Agreements; however, they paid the required deposit for their daughter's wedding, as required by the Letter Agreement.

> The Letter Agreements included the following relevant provisions:

> **<u>Payment Schedule</u>**

> The Non-Refundable and Non Transferrable deposit of $5,000.00 made payable to Cescaphe Event Group guarantees the date of your affair. The deposit is to be returned with this signed Letter Agreement. The initial deposit is applied toward your event planning.

---

[1]      In adjudicating the underlying motion, this Court has also considered Defendants' reply.  [ECF 19].

[2]      The facts set forth herein are drawn from the amended complaint and the exhibits attached thereto and to the parties' briefs.  For purposes of this motion, this Court will construe the facts and evidence in the light most favorable to the non-movant—here, Plaintiffs.

**Law and Arbitration**

>This Letter Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. Any and all disputes, disagreements, or claims arising out of or relating to or in respect to this Letter Agreement, or any breach thereof, or the scope of arbitrability of this arbitration provision shall be settled by arbitration in Philadelphia, PA in accordance with the rules then existing of: (i) ADR Options Incorporated pursuant to its Rules of Procedure for Arbitration; or, (ii) the American Arbitration Association. The award of the arbitrator shall be final, non-appealable and conclusively binding upon the parties hereto and may be entered in any court having jurisdiction thereof. (Emphasis added.).

Plaintiffs' weddings were originally scheduled to occur in May, June, and July 2020. However, due to the COVID-19 pandemic and various state and local restrictions put in place in response to the pandemic, Plaintiffs' weddings had to be rescheduled. Despite Plaintiffs' requests for the return of their deposits, Cescaphe has refused to return the deposits.

**LEGAL STANDARD**

When addressing a motion to compel arbitration, the Court must first determine the standard of review to apply: either the motion to dismiss standard under Federal Rule of Civil Procedure ("Rule") 12 or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resol., LLC.*, 716 F.3d 764, 771–72 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773–74 (internal citations omitted). Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard." *Id.*

Here, Plaintiffs assert various claims, including breach of contract, premised on Defendants' alleged failure to discharge its obligations under the Letter Agreements. Plaintiffs' claims are premised on the existence of the Letter Agreements, copies of which have been provided

to the Court. It is undisputed that the Letter Agreements each contain an arbitration provision. As such, the issue of arbitrability is apparent on the face of the amended complaint. Thus, this Court finds that the Rule 12 motion to dismiss standard is applicable to determining the validity and enforceability of the Arbitration Provisions at issue. *See Guidotti*, 716 F.3d at 772–74.

**DISCUSSION**

Defendants move to compel arbitration of all of Plaintiffs' claims on an individual, rather than a class, basis, because of the inclusion of a clear and binding arbitration provision in each of the written agreements underlying Plaintiffs' claims and the absence of any provision addressing class arbitration. As noted, Plaintiffs contend that: (1) this matter should not go to arbitration because some of the Plaintiffs are not parties to the Arbitration Provisions and, thus, are not bound thereto; (2) the issue of whether Plaintiffs' class claims should be arbitrated should be decided by the arbitrator; and (3) the Arbitration Provisions are not enforceable because they are illegal. Each of the contentions is addressed below.

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). The primary substantive provision of the FAA, § 2, provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Further, § 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted).

Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*  If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." *Id.* § 3.

Before compelling arbitration, a court must typically determine (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  However, when an arbitration provision, by "clear and unmistakable evidence," contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists. *Henry Shein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").  This "gateway dispute about whether the parties are bound by a given arbitration clause" is for the court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

However, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Shein, Inc.*, 139 S. Ct. at 530.  The "arbitrability issue" presumptively includes "allegations of waiver, delay, or a like

defense to arbitrability." *Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25).  Additionally, a delegation clause may delegate the issue of whether a particular dispute falls within the scope of the agreement to the arbitrator.  *See Singh v. Uber Techs., Inc.*, 939 F.3d 210, 228 (3d Cir. 2019) (holding that all questions subject to delegation clause were for arbitrator to decide, including whether parties' dispute fell within scope of arbitration agreement).

If the delegation clause includes the enforceability of the arbitration provision, the court cannot consider the question of enforceability "unless a party challenged the delegation clause and the court concludes that the delegation clause is not enforceable." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020) (internal citation and quotations omitted).  A party seeking to avoid arbitration under those circumstances must "challenge the delegation provision specifically[.]"  *Id.* (quoting *Rent-A-Center West, Inc.*, 561 U.S. at 72); *see also Kocjancic v. Bayview Asset Mgmt., LLC*, 2014 WL 5786900, at *4 (E.D. Pa. Nov. 6, 2014) (compelling arbitration where plaintiff had "not contested the validity of the delegation provision in particular").

### *The Arbitration Provisions' Application to Non-Signatory Plaintiffs*

In opposition to Defendants' motion to compel arbitration, Plaintiffs argue that this matter should not go to arbitration because some of the Plaintiffs (Robert Daniels and Deborah Monti) are not signatories to any of the contracts containing the Arbitration Provisions.  As noted, Plaintiffs Daniels and Monti were not parties to the Letter Agreements, but merely paid the requisite deposit on behalf of their daughter.  Where a signatory to an arbitration agreement attempts to bind a non-signatory, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has recognized that under Pennsylvania law, the relevant test is whether "the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin*

6

*Intermediates, S.A.S.*, 269 F.3d 187, 199–200 (3d Cir. 2001).   As the Third Circuit further explained in *Griswold v. Coventry First LLC*, 762 F.3d 264 (3d Cir. 2014), a party "knowingly exploits" an agreement either "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims based on the contract's other provisions." *Id.* at 271–72 (citations omitted).   "Under the first theory, courts prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *E.I. DuPont*, 269 F.3d at 200. Under the second theory, the law prevents a non-signatory from "'cherry picking' the provision of a contract that it will benefit from and ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)." *Griswold*, 762 F.3d at 273 (quotations omitted).

Based on the allegations in the amended complaint, there is no dispute that Plaintiffs Daniels and Monti are currently seeking to enforce terms of the Letter Agreements by asserting claims based on the Letter Agreements' provisions.   Indeed, in the amended complaint, Plaintiffs Daniels and Monti—along with all of the other Plaintiffs—assert "breach of contract" claims against Defendants premised on various purported breaches of the Letter Agreements.   (*See* Am. Compl., ECF 8, at ¶¶ 86–91).   As a result, Plaintiffs Daniels and Monti are equitably estopped from avoiding the Arbitration Provisions contained in the Letter Agreements.   *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 327–28 (W.D. Pa. 2020) (compelling arbitration where defendant, a non-signatory, received a direct benefit flowing from the agreement that contained an arbitration provision); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 274–75 (E.D.N.Y. 2019) (compelling husband's claims to arbitration because he "knowingly accepted the benefit of [his wife's] contractual relationship with Amazon" and so "must also be held to the arbitration clause that governs that relationship"); *Montoya v. Comcast Corp.*, 2016 WL 5340651,

at *1 (E.D. Cal. Sept. 23, 2016) ( "Plaintiff['s] admitted use of [Comcast's] service demonstrates Plaintiff[] knowingly exploited the agreement for [Comcast's] services.").

### *Arbitrability of Class Action Claims*

This Court next turns to the parties' arguments with respect to whether Plaintiffs' class action claims are arbitrable.  Defendants argue that, pursuant to the Arbitration Provisions contained in the Letter Agreements, Plaintiffs are required to arbitrate all of their claims, but only on an individual basis, and not on behalf of the purported class.  In response, Plaintiffs contend that in the event their claims must be arbitrated, the Arbitration Provisions contain delegation clauses which require the class action dispute to be decided by the arbitrator.  This issue was decided by the Third Circuit in *Opalinski v. Robert Half International Inc.*, 761 F.3d 326 (3d Cir. 2014).

In *Opalinski*, the plaintiffs asserted various claims for unpaid overtime wages against their former employer on their own behalf and on behalf of a purported class.  *Id.* at 329.  Like Defendants in this case, the defendant in *Opalinski* moved to compel arbitration of the plaintiffs' wage claims **on an individual basis only** pursuant to arbitration provisions contained in the plaintiffs' employment agreements.  *Id.*  The district court granted the employer's motion to compel arbitration but held that the issue of whether the class claims were subject to arbitration was to be decided by the arbitrator.  *Id.*  Following the arbitrator's issuance of a partial award and ruling that the employment agreements permitted class-wide arbitration, the employer appealed to the Third Circuit, arguing that the district court incorrectly held that the issue of arbitrability of the class claims was reserved for the arbitrator.  *Id.*

On appeal, the Third Circuit reversed the district court and held that the issue of whether an agreement provides for class-wide arbitration is a question of arbitrability, to be decided by the district court, "unless the parties clearly and unmistakably provide otherwise."  *Id.*  at 332, 335

(quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator. Silence or ambiguous contractual language is insufficient to rebut the presumption." *Id.* at 335 (citations omitted). Finding that the employment agreements containing the arbitration provisions were "silent as to the availability of class-wide arbitration or whether the question should be submitted to the arbitrator," the Third Circuit held "the strong presumption favoring judicial resolution of questions of arbitrability is not undone, and the District Court had to decide whether the arbitration agreements permitted class-wide arbitration." *Id.*

Like the agreements in *Opalinski*, the Letter Agreements here, including the Arbitration Provisions contained therein, are silent with respect to the availability of class-wide arbitration or whether the issue should be submitted to the arbitrator. As such, this Court finds, consistent with *Opalinski*, that the issue of whether Plaintiffs' class action claims are arbitrable must be decided by this Court rather than an arbitrator.

Turning to the arbitrability or not of Plaintiffs' class action claims, this issue has been definitively resolved by the United States Supreme Court's (the "Supreme Court") decisions in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010) and *Lamps Plus, Inc. v. Varela*, — U.S. —, 139 S. Ct. 1407 (2019). Summarizing its decision in *Stolt-Nielssen*, the Supreme Court wrote:

> The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms. *See* 9 U.S.C. § 2. In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L.Ed.2d 605 (2010), we held that a court may not compel arbitration on a classwide basis when an agreement is "silent" on the availability of such arbitration. Because class arbitration fundamentally changes the nature of the "traditional individualized arbitration" envisioned by the FAA, *Epic Systems Corp.* v. *Lewis*, 584 U.S. —, —, 138 S. Ct. 1612, 1623, 200 L.Ed.2d

> 889 (2018), "a party may not be compelled under the FAA to submit
> to class arbitration unless there is a contractual basis for concluding
> that the party *agreed* to do so," *Stolt-Nielsen*, 559 U.S. at 684, 130
> S. Ct. 1758 (emphasis in original).  We now consider whether the
> FAA similarly bars an order requiring class arbitration when an
> agreement is not silent, but rather "ambiguous" about the
> availability of such arbitration.

*Lamps Plus*, 139 S. Ct. at 1412.  The Supreme Court went on to hold that "[c]ourts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis."  *Id.* at 1419.

Here, the Letter Agreements and the Arbitration Provisions contained therein are silent with respect to class action claims or class action arbitration.  While the phrase "class arbitration" or "class action" are not essential, their absence "makes it harder to show that the parties consented to it."  *Marbaker v. Statoil USA Onshore Props., Inc.*, 801 F. App'x 56, 60–61 (3d Cir. 2020) (citing *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 758–59 (3d Cir. 2016)).  In the absence of any indicators within the parties' Letter Agreements showing the parties' consent to class-wide arbitration, this Court finds that the parties have not agreed to class-wide arbitration.

Notwithstanding the complete absence of any reference to class-wide arbitration or class actions in the Letter Agreements, Plaintiffs argue that the parties agreed to class-wide arbitration by referencing the "rules" of the American Arbitration Association in the Letter Agreements.  This argument has been rejected by the Third Circuit.  *See Marbaker*, 801 F. App'x at 61–62 ("We thus held that a general reference to the AAA's rules did not manifest the parties' consent to class arbitration.") (citing *Scout Petroleum*, 809 F.3d at 765–66).  As such, Plaintiffs' argument is without merit.  Accordingly, the parties have consented to individual arbitration *only*, and not to classwide arbitration.

***Enforceability of Letter Agreements***

Lastly, Plaintiffs argue that the Letter Agreements are unenforceable because it was allegedly illegal to perform the contracts due to various COVID-19 governmental restrictions. This argument, too, has been expressly rejected by the Supreme Court.  In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), plaintiff consumers sought to avoid an arbitration provision contained in their agreements with a check cashing company on the basis that the agreements— not the arbitration provisions—were void for illegality.  Rejecting the plaintiffs' arguments, the Supreme Court held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."  *Id.* at 449.

Here, in seeking to avoid arbitration, Plaintiffs do not challenge the legality of the Arbitration Provisions but, rather, challenge the legality of the Letter Agreements themselves. This determination must be decided by the arbitrator, not the court.

**CONCLUSION**

For the reasons stated herein, Defendants' motion to compel arbitration is granted but *only* on an individual basis.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.